UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| UNITED STATES OF AMERICA | CRIMINAL ACTION |
| VERSUS | NO. 24-38 |
| MIGUEL KEELEN | SECTION L (5) |

**ORDER & REASONS**

Before the Court is Defendant Miguel Keelen's objection to the Presentence Investigation Report. R. Doc. 42. The Government opposes the Motion. R. Doc. 43. Defendant replied. R. Doc. 44. Considering the record, the briefing, and the applicable law, the Court now rules as follows.

I. **BACKGROUND**

On August 29, 2024, Defendant pled guilty to Count One of an indictment which charged him with being a felon in possession of a firearm in violation of Title 18 U.S.C. §§ 922(g)(1) and 924(a)(8). Probation thereafter prepared a Presentence Investigation Report, which applied U.S.S.G. § 2K2.1(a)(1) to Defendant's offense. R. Doc. 33 at 6. This Guideline, which enhances the penalties for certain firearms crimes, provides that a defendant's base offense level is:

> 26, if (A) the offense involved a (i) semiautomatic firearm that is capable of accepting a large capacity magazine; or (ii) firearm that is described in 26 U.S.C. § 5845(a); and (B) the defendant committed any part of the instant offense subsequent to sustaining at least two felony convictions of either a crime of violence or a controlled substance offense.

Probation found that Defendant had two prior "controlled substance offenses:" a 2013 Louisiana conviction for possession with intent to distribute marijuana and a 2023 federal conviction for possession with intent to distribute cocaine and fentanyl. R. Doc. 33 at 6. Using this base offense level of 26, Probation found an overall Guidelines range of 92-115 months.[1]

---

[1] Mr. Keelen received a 3-level decrease for acceptance of responsibility for a total offense level of 23. His criminal history category is VI. Using these figures, probation calculated a Guidelines range of 92-115 months.

1

## II. PRESENT MOTION

Defendant objects to the application of the § 2K2.1(a)(1) enhancement. R. Doc. 42. He concedes that his 2023 federal conviction is a "controlled substance offense." However, he contends that his 2013 Louisiana conviction for possession with intent to distribute marijuana is not categorically a "controlled substance offense" within the meaning of the Guidelines. *Id.* at 2. Thus, he avers that § 2K2.1(a)(3), which applies where the defendant has only one prior qualifying conviction—his 2023 conviction—is the appropriate Guideline. Defendant therefore argues that his Guidelines range should be 63-78 months rather than 92-115 months as calculated by Probation.[2]

The Government opposes the motion. R. Doc. 43. It acknowledges that Louisiana's 2013 marijuana definition was facially broader than the current federal definition. *Id.* at 1. However, it avers that Defendant must make an additional showing that there is a "realistic probability" that Louisiana in fact prosecuted people for crimes involving hemp under the prior definition. *Id.* Defendant replied, disputing the application of the realistic probability test and, alternatively, arguing that he can meet the requirements of that test.

## III. ANALYSIS

The parties dispute two issues: (1) whether the Court must apply a "realistic probability" test to determine whether Defendant's 2013 offense is a qualifying predicate and (2) if so, whether Defendant can meet the requirements of that test. The Court takes each in turn.

### A. The Realistic Probability Test Is Not Applicable.

The parties dispute whether the Court must apply a "realistic probability test" under these circumstances. The Court first summarizes background principles involved in comparing state

---

[2] Probation has also prepared a Sentencing Recommendation and Supplemental Addendum to the Final Presentence Investigation Report reflecting the application of § 2K2.1(a)(3). R. Docs. 35, 36. These materials were prepared at the request of this Court in order to compare the difference in the guidelines ranges urged by each side. These documents do not necessarily reflect the position or recommendation of the Probation office.

2

offenses to federal definitions pursuant to the Guidelines. It then describes the applicable Supreme Court jurisprudence giving rise to the realistic probability test. Finally, the Court considers the parties arguments.

  **i. The Process of Determining Whether a Prior State Conviction is a Qualifying "Controlled Substance Offense"**

  Pursuant to the Guidelines, a defendant's base offense level is enhanced to 26 when, among other requirements, he "committed any part of the instant offense subsequent to sustaining at least two felony convictions of either a crime of violence or a controlled substance offense." U.S.S.G. § 2K2.1(a)(1). "The government has the burden of demonstrating, by a preponderance of the evidence, the facts that are necessary to support the enhancement." *United States v. Soza*, 874 F.3d 884, 889 (5th Cir. 2017). The Guidelines define the term "controlled substance offense" to mean "an offense under federal or state law, punishable by imprisonment for a term exceeding one year, that . . . prohibits the manufacture, import, export, distribution, or dispensing of a controlled substance" or the "possession" of such substance with "intent to commit" one of these acts. The Fifth Circuit has held that the term "controlled substance offense" as used in this definition, refers to crimes involving drugs found on the *federal* drug schedules—that is, those listed in the Controlled Substances Act—not the state drug schedules. *United States v. Gomez-Alvarez*, 781 F.3d 787, 793 (5th Cir. 2015). And recently, in *United States v. Minor*, the Fifth Circuit further clarified that a "controlled substance" is one listed on the current version of the federal drug schedules, as it exists at the time of the instant sentencing. 121 F.4th 1085, 1093 (5th Cir. 2024).

  Therefore, where the defendant has a prior state drug conviction, the court must determine whether that conviction is a "controlled substance offense" within the meaning of this Guidelines definition. In conducting this inquiry, sentencing courts must apply the "categorical approach." *Moncrieffe v. Holder*, 569 U.S. 184, 190, (2013). Under this approach, the court must

"look not to the facts of the particular prior case, but instead to whether the state statute defining the crime of conviction categorically fits within" the Guidelines' definition. *Id.* Thus, courts analyze "the elements of the statute" that are the basis of the defendant's prior conviction and do not consider "the actual conduct of the defendant in committing the offense." *United States v. Hinkle*, 832 F.3d 569, 572 (5th Cir. 2016). Put another way, the court "presumes that the conviction rested upon nothing more than the least of the acts criminalized, before determining whether even those acts are encompassed" in the federal definition. *Moncrieffe*, 569 U.S. at 190 (internal citations omitted). Specifically, where the defendant argues that a prior statute is not a categorical match because it criminalized a substance that was subsequently removed from the federal schedules, the Court must presume that the Defendant's prior conviction indeed involved the decriminalized drug. *See United States v. Abdulaziz*, 998 F.3d 519, 522 (1st Cir. 2021) (holding that the categorical approach requires the court to presume that the defendant's prior convictions involved the delisted drug for purposes of the analysis).

Here, Defendant argues that his 2013 Louisiana conviction for "possession with intent to distribute marijuana" is not categorically a "controlled substance offense" within the meaning of the Guidelines. He avers that one of the elements of his state offense was that he possessed the specific drug "marijuana." He observes that in 2013, Louisiana defined marijuana to include "hemp." But hemp was removed from the federal drug schedules in 2018, meaning that crimes involving hemp now do not qualify as Guidelines "controlled substance offenses." He argues that the Court must apply the categorical approach and presume that he committed the 2013 offense by way of the "least of the acts criminalized." In this context, this requirement means that the Court must presume he indeed committed the 2013 crime by possession of the decriminalized substance at issue, hemp. Accordingly, he contends that the elements of his conviction do not categorically match the Guidelines' definition of a "controlled substance offense."

4

The Government agrees that the Court must apply the categorical approach and examine only whether the elements of defendant's prior crime are encompassed by the federal generic definition. It further concedes that Louisiana's 2013 statute was broader than the current Guidelines' definition because the state statute defined marijuana to include hemp. *See Minor*, 121 F.4th at 1089 (holding that drug schedules listing hemp "criminalize a broader swath of conduct than the Guidelines' definition of 'controlled substance offense'"). However, it argues that application of the categorical approach alone does not end the inquiry. Rather, it contends that after applying the categorical approach, the Court must also apply the "realistic probability test." And, it maintains that Defendant cannot meet this test because he cannot identify any cases where Louisiana actually charged someone for an offense involving hemp.

    ii. **The Burden of the Realistic Probability Test**

The parties agree that where it applies, the realistic probability test imposes a burden on the defendant to "identify actual cases" where the state "brought charges against someone" for the conduct which the defendant argues renders the state statute broader than the federal definition. *United States v. Kerstetter*, 82 F.4th 437, 441 (5th Cir. 2023), (overruled on other grounds, No. 23-7478, 2024 WL 4426463 (U.S. Oct. 7, 2024)). In this case, the parties agree that application of the realistic probability test would require Defendant to point to a case where Louisiana prosecuted someone for a case involving hemp. However, the parties dispute whether the realistic probability test is even applicable at all in this case. Because the context in which the realistic probability test emerged is crucial to understanding the issue this case presents, the Court summarizes the foundational Supreme Court case law before reaching the parties arguments.

    iii. **The Supreme Court and the Origins of the Realistic Probability Test**

The realistic probability test derives from *Gonzales v. Duenas-Alvarez*, 549 U.S. 183 (2007). There, the Supreme Court was analyzing whether the defendant's prior California conviction

5

qualified as a prior "theft" offense for purposes of a federal statute. *Id.* at 185. Crucially, the defendant conceded that the elements of the state statute under which he was convicted indeed facially aligned with the federal statute's generic elements of theft. *Id.* at 190. But, the defendant contended that California actually "applied" the statute in a broader way than encompassed by than this federal definition. That is, he argued that California applied a lower *mens rea* for aiding and abetting liability than was required by the federal generic definition. *Id.* The Court observed that:

> [I]n our view, to find that a state statute creates a crime outside the generic definition of a listed crime in a federal statute requires more than the application of legal imagination to a state statute's language. It requires a *realistic probability, not a theoretical possibility, that the State would apply its statute to conduct that falls outside the generic definition of a crime.* To show that realistic probability, an offender, of course, may show that the statute was so applied in his own case. But he must at least point to his own case or other cases in which the state courts in fact did apply the statute in the special (nongeneric) manner for which he argues.

*Id.* at 194. (emphasis added). Accordingly, the Court proceeded to analyze California case law to determine whether California, in fact, applied its criminal statute in a more expansive way than encompassed by the federal definition. *Id.* at 192-93. Ultimately, the Court found that Defendant could not carry this burden of proving a "special" application. *Id.*

The Supreme Court further clarified the limited applicability of the realistic probability test in *United States v. Taylor*, 596 U.S. 845 (2022). There, the Court was determining whether an "attempted Hobbs act robbery," a federal crime, was a qualifying predicate "crime of violence" under the federal Armed Career Criminal Act. *Id.* at 850. The Court explained that application of the realistic probability test was unnecessary for "at least two reasons:"

> First, the immigration statute at issue in *Duenas-Alvarez* required a federal court to make a judgment about the meaning of a state statute. Appreciating the respect due state courts as the final arbiters of state law in our federal system, this Court reasoned that it made sense to consult how a state court would interpret its own State's laws. Meanwhile, no such federalism concern is in play here. The statute before us asks only whether the elements of one federal law align with those prescribed in another.

*Id.* at 858-59. Moreover, the Court explained that:

6

> Second, in *Duenas-Alvarez* the elements of the relevant state and federal offenses clearly overlapped and the only question the Court faced was whether state courts also "appl[ied] the statute in [a] special (nongeneric) manner." Here, we do not reach that question because there is no overlap to begin with. Attempted Hobbs Act robbery does not require proof of any of the elements § 924(c)(3)(A) demands. That ends the inquiry, and nothing in *Duenas-Alvarez* suggests otherwise.

*Id.* at 859. Accordingly, the Court concluded that there was no need to apply the realistic probability test under the circumstances presented. *Id*

### iv. Discussion

The Government argues that *Duenas-Alvarez* stands for the proposition that the Court should always apply the realistic probability test when it asks whether a prior state conviction is a qualifying predicate for a federal enhancement. It argues that *Taylor* merely holds that the realistic probability test need not be applied where the court examines a prior *federal* statute. Defendant disagrees, contending that *Duenas-Alvarez* and *Taylor* mean that the court need not apply the realistic probability test when state statute facially—by its text—encompasses more conduct than the Guidelines' definition. Rather, the court must only apply the test when there is a dispute about what conduct the state statute reaches and whether than conduct is also included in the federal definition. The Court agrees with Defendant.

The Government's interpretation takes the realistic probability test out of the context in which it originated. In *Duenas-Alvarez*, the Court was not faced with a facially overbroad state statute. Rather, the defendant conceded that the elements of the state statute and federal definition matched. Thus, "*Duenas-Alvarez* is concerned with the defendant who tries to demonstrate that a statute is overbroad by hypothesizing that it might be applied in some fanciful or unlikely way—through 'the application of legal imagination.'" *United States v. Castillo-Rivera*, 853 F.3d 218, 239 (5th Cir. 2017) (Dennis, J., dissenting). However, where "a state statute explicitly defines a crime more broadly than the generic definition, no 'legal imagination' is required to hold that a realistic

7

probability exists that the state will apply its statute to conduct that falls outside the generic definition of the crime. The state statute's greater breadth is evident from its text." *Id.* (quoting *United States v. Grisel*, 488 F.3d 844, 850 (9th Cir. 2007)). Thus, the realistic probability test is simply unnecessary.

Here, there is no dispute regarding the breadth of the Louisiana statute at issue. All parties agree that in 2013, Louisiana criminalized hemp. The current federal drug schedules do not list hemp. Accordingly, this case is quite unlike *Duenas-Alvarez*, where the Court was called upon to determine whether the state statute in fact "create[d] a crime" that fell "outside the generic definition." Rather, the parties here *agree* that the Louisiana statute created a crime that falls beyond the Guidelines' definition. Thus, application of the realistic probability test is not necessary.

The Court acknowledges that the Fifth Circuit has previously held that the realistic probability test applies whenever the categorical approach is used, even where the statute is facially broader than the federal definition. *See Castillo-Rivera*, 853 F.3d at 223 ("There is no exception to the actual case requirement articulated in *Duenas-Alvarez* where a court concludes a state statute is broader on its face."). However, this case law predated the Supreme Court's decision in *Taylor*. The *Taylor* Court clarified that the realistic probability test is inapplicable where (1) the court is not called upon to make a "judgment about the meaning" of the statute and (2) there is "no overlap to begin with" between the elements of the statute and the federal definition. 596 U.S. at 858-59. Here, both reasons articulated in *Taylor* are likewise met. All parties agree that the "meaning" of the Louisiana statute is to criminalize hemp. And all parties agree that the elements of the Louisiana conviction and the federal definition do not categorically "overlap."

The Court further acknowledges that the Fifth Circuit has indicated that it views some of its realistic probability jurisprudence as surviving *Taylor*. In *United States v. Kerstetter*, a case arising under the ACCA, the Fifth Circuit limited *Taylor* to its facts and construed it as only applying to dispense with the realistic probability test where the court is analyzing prior *federal* convictions, not

8

prior *state* convictions. 82 F.4th 437, 441 (5th Cir. 2023). In another recent decision, the Fifth Circuit briefly observed in dicta in a Guidelines case that "[w]e continue to apply that realistic probability test to state court convictions." *Minor*, 121 F.4th at 1093 n.9.

Preliminarily, the Court notes that neither of these decisions regarding whether *Taylor* abrogates earlier law is binding on the instant case. *Kerstetter* arose in the ACCA context, not the Guidelines context. Multiple sections of this Court have already distinguished *Kerstetter* on this basis. *See United State v. Riley*, No. 23-82, R. Doc. 140; *United States v. Steele*, No. 22-195, 2024 WL 1877072, at *5 (E.D. La. Apr. 23, 2024) (declining to apply the realistic probability test in a Guidelines case and explaining that "the Fifth Circuit's holding in *Kerstetter* should be construed as narrowly as possible to the facts of that case because the opinion provides no reasoning for imposing the burden shifting scheme and 'realistic probability' standard on the defendant."). Further, *Kerstetter* has also been vacated by the Supreme Court on alternate grounds. No. 23-7478, 2024 WL 4426463 (U.S. Oct. 7, 2024). *Minor* is likewise non-binding: the Court was addressing a defendant with prior *federal* convictions, meaning that the Court's statement in a footnote regarding application of the realistic probability test to those with state convictions is dicta. 121 F.4th at 1093 n.9.

Leaving aside the non-binding nature of these opinions, the Court simply cannot square them with the *Taylor* Court's directives. As already explained, *Taylor* found that the realistic probability test should not be applied where the court is not called upon to interpret the "meaning" of a statute or where the elements of the state statute and federal definition do not match. Moreover, *Taylor* and other Supreme Court opinions expressly direct courts to apply the categorical approach. *See Moncrieffe*, 569 U.S. at 190. And application of the realistic probability test to facially overbroad state statutes conflicts with the categorical approach. As the Eight Circuit has explained:

> The government's interpretation invites us to conclude that "realistic probability" means that petitioners must prove through specific convictions that unambiguous laws really mean what they say. Not only is this proposal contrary to our understanding of *Duenas-Alvarez*[], but it

9

> is also at odds with the categorical approach itself, which asks us to focus on the language of the statutory offense, "not the facts underlying the case." *Moncrieffe*, 569 U.S. at 190, 133 S.Ct. 1678; *see also Descamps*, 570 U.S. at 261, 133 S.Ct. 2276 ("The key [of the categorical approach] . . . is elements, not facts.") We therefore reject the government's interpretation and conclude that, "in applying the categorical approach, state law crimes should . . . be given their plain meaning."

*Gonzalez v. Wilkinson*, 990 F.3d 654, 660–61 (8th Cir. 2021). Here, as Defendant argues, the categorical approach requires this Court to examine only the elements of the prior conviction and presume that he committed the prior offense by trafficking hemp. No further analysis is needed to determine that the Louisiana statute is overbroad and is therefore not a valid predicate. *See Gordon v. Barr*, 965 F.3d 252, 260 (4th Cir. 2020) ("[W]hen the state, through plain statutory language, has defined the reach of a state statute to include conduct that the federal offense does not, the categorical analysis is complete; there is no categorical match.").

Overall, this Court sees no meaningful justification for limiting *Taylor* to its facts and applying the realistic probability test only to those with prior state convictions, not prior federal convictions. Indeed, the Court notes that every other Circuit has held that courts should not apply the realistic probability test where the state statute is facially overbroad.[3]

---

[3] *See, e.g.*, *Swaby v. Yates*, 847 F.3d 62, 66 (1st Cir. 2017) (holding that the realistic probability test does not apply where the drug schedules are not a categorical match); *Matthews v. Barr*, 927 F.3d 606, 620 (2d Cir. 2019) (applying the realistic probability test "[w]here a statute is not facially overbroad"); *Singh v. Attorney Gen.*, 839 F.3d 273, 286 (3d Cir. 2016) ("The BIA erred in conducting a 'realistic probability' inquiry because [h]ere, the elements of the crime of conviction are not the same as the elements of the generic federal offense and [t]he Supreme Court has never conducted a 'realistic probability' inquiry in such a case"); *Gordon v. Barr*, 965 F.3d 252, 260 (4th Cir. 2020) ("[W]hen the state, through plain statutory language, has defined the reach of a state statute to include conduct that the federal offense does not, the categorical analysis is complete; there is no categorical match."); *Mendieta-Robles v. Gonzales*, 226 F. App'x. 564, 572 (6th Cir. 2007) (holding that the Government's legal-imagination argument fails because "it requires us to ignore the clear language" of the statute); *Aguirre-Zuniga v. Garland*, 37 F.4th 446, 450 (7th Cir. 2022) ("On appeal, the government wisely concedes that courts first apply the categorical approach and look to realistic probability only if the statute is ambiguous."); *United States v. Daye*, 90 F.4th 941, 946 (8th Cir. 2024) (we have already held that "when the statute's reach is clear on its face," no case citation is required."); *United States v. Grisel*, 488 F.3d 844, 850 (9th Cir. 2007) (en banc) ("Where ... a state statute explicitly defines a crime more broadly than the generic definition, no "legal imagination" is required to hold that a realistic probability exists that the state will apply its statute to conduct that falls outside the generic definition of the crime."); *United States v. Titties*, 852 F.3d 1257, 1275 (10th Cir. 2017) (collecting other cases for the proposition that the realistic probability test need not apply to facially overbroad statutes); *Said v. U.S. Att'y Gen.*, 28 F.4th 1328, 1332 (11th Cir. 2022) ("[A] litigant can use facially overbroad statutory text to meet the burden of showing the realistic probability that the state law covers more conduct than the federal.").

10

### B. Defendant Could Meet the Realistic Probability Because He Can Show That Louisiana Prosecuted Defendants for Crimes Involving Hemp

Even if the Court applied the realistic probability test, Defendant can meet that test because he can point to an "actual case" where Louisiana "brought charges against someone" for crimes involving hemp. *Kerstetter*, 82 F.4th at 441. Defendant cites *State v. Broadway*, a Louisiana case where the state charged the defendant with "cultivation of marijuana." 40,569, p. 1 (La. App. 2 Cir. 1/25/06), 920 So. 2d 960, 961. This charge arose from the defendant's cultivation of a plant growing nearby his residence. *Id.* The opinion refers to this plant as a "marijuana plant" several times. However, when describing the testimony of one of the police officers who discovered the plant, the opinion describes it as a "healthy hemp plant." *Id.* at 963.

The Government argues that this "passing reference" is insufficient to meet the realistic probability test because there was "no further discussion or analysis of the nature of the substance involved." R. Doc. 43 at 4. The Court disagrees. There is no inconsistency in the *Broadway* court's interchangeable use of the terms "marijuana plant" and "hemp plant" because, at the time the opinion was written, the definition of "marijuana" included "hemp."[4] There is simply no reason to speculate, as the Government suggests, that despite the Court's clear reference to a "hemp plant," the plant in question could have been some different, non-hemp variety of marijuana plant. Accordingly, the Court finds that Defendant has met his burden of showing a "realistic probability" that Louisiana indeed applied its statute to target crimes involving hemp.

Finally, the Court finds that even if Defendant failed the realistic probability test, the Court would depart downward and impose a sentence within the lower 63–78-month range. The Government's interpretation—that the realistic probability test must be applied to defendants with prior state convictions but not to those with prior federal convictions—leads to unwarranted

---

[4] That is, in 2006, Louisiana defined "marijuana" as "all parts of plants of the genus Cannabis." La. Stat. Ann. § 40:961 (2006). Hemp plants are indeed a species of "cannabis." *See* La. Stat. Ann. § 40:961 (2018) ("'Industrial hemp'

11

sentencing disparities. Here, if Defendant were unable to meet a realistic probability test, then his Guidelines range would be approximately 30 months higher than an otherwise identically-situated defendant with a 2013 federal marijuana conviction, who would clearly not be subject to a realistic probability test. Pursuant to 18 U.S.C. § 3553(a)(6), one factor which courts consider at sentencing is "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." The Court finds that the disparate results generated by application of the realistic probability test to only defendants with prior state offenses would create an "unwarranted sentencing disparity" sufficient to justify a downward departure in this case.

### IV. CONCLUSION

For the foregoing reasons,

**IT IS ORDERED** that Defendant's objection to the Pre-Sentence Investigation Report is **GRANTED.** The Court finds that Mr. Keelen's correct Guidelines range to 63-78 months.

New Orleans, Louisiana on this 29th day of January, 2025.

Eldon E. Fallon
U.S. District Court Judge

---

means the plant Cannabis sativa and any part of that plant.").